In re the CUSTODY, Support and Visitation OF A.N.W.

**Edward Watkins, Appellant,**

v.

**Janelle Fay Eden, Appellee.**

No. 21A04–0302–CV–87.

Court of Appeals of Indiana.

Nov. 17, 2003.

---

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, IN, Attorney for Appellant.

Thomas M. Thompson, Smith & Thompson, Connersville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant, Edward Watkins (Father), appeals the trial court's Order on Custody, Support and Visitation.

We affirm.

*ISSUE*

Father raises one issue on review, which we restate as follows: whether a finding by a judge of an Indiana court that a judge of an out-of-state court, which would otherwise have jurisdiction, declined that jurisdiction in a conversation over the telephone is sufficient to support exercise of jurisdiction in Indiana under the Uniform Child Custody Jurisdiction Law (UCCJL).

*FACTS AND PROCEDURAL HISTORY*

Father and Appellee, Janelle Eden (Mother), were divorced in Texas in 1995. The Decree of Divorce granted Father custody of their minor child, A.N.W. Eventually, Mother moved to Indiana. Father and A.N.W. remained in Texas. The last entry docket of the original divorce action in Tarrant County, Texas, was the Decree of Divorce issued in 1995. In December of 2000, A.N.W. visited Mother in Indiana for the Christmas holiday. A.N.W. has resided with Mother in Connersville, Indiana, since December of 2000. Additionally, A.N.W. has attended school in Indiana since January of 2001 at Grandview Elementary.

On April 17, 2002, Father showed up at Grandview Elementary during school hours. The school notified the police and Mother. Mother immediately contacted her counsel. Mother's counsel requested an emergency hearing based upon the fact that Father was in Indiana from Texas. There was also concern that the matter was too sensitive to settle without a court order. Senior Judge Robert L. Reinke (Judge Reinke) was available on this date for an emergency hearing.

Before holding a hearing on Mother's Verified Petition to Transfer and Assume Jurisdiction and to Modify Custody Decree of Another State, Judge Reinke contacted Judge Sullivan, the presiding Judge of the Tarrant County, Texas court. This Texas

court entered the Decree of Divorce between Father and Mother on December 15, 1995. After discussing the situation, Judge Sullivan advised Judge Reinke that there were no pending proceedings concerning A.N.W. or between Father and Mother in Tarrant County, Texas. Further, Judge Sullivan informed Judge Reinke under the circumstances of the emergency petition, *i.e.* A.N.W. has lived in Indiana since December of 2000 and A.N.W. has attended school in Indiana since January of 2001, he did not want to continue jurisdiction of this matter in Texas. As a result, Judge Sullivan of Tarrant County, Texas declined jurisdiction because he "believed [Indiana] should properly go ahead and decide the issues of custody here." (Transcript p. 5) Therefore, the Indiana court assumed jurisdiction.

Specifically, on April 17, 2002, the trial court entered its Order Assuming Jurisdiction and Granting Temporary Custody. The Order stated the following:

Comes now Janelle Eden (Mother), in person and with counsel, Bette Jo Jones, and [Father], in person, for emergency hearing in this matter on April 17, 2002. The Court finds as follows:

1. The Tarrant County District Court has declined jurisdiction in this matter.

2. The last entry on the docket of the original divorce action in Tarrant County, Texas, was the Decree issued in 1995.

3. The minor child, [A.N.W.], has resided with [Mother], in Connersville since December 25, 2000.

4. The minor child has attended Grandview School since January, 2001.

5. [Father] resides at 3350 Western Center Blvd. # 339, Fort Worth, Texas 76137.

6. Indiana is the home state of the child herein and has been for more than the six (6) months prior to this proceeding.

7. [Mother] requests that a Guardian Ad Litem or Court Appointed Special Advocate be appointed.

Based upon the foregoing findings, this Court assumes jurisdiction in this matter in accordance with the Uniform Child Custody Jurisdiction Law. The Court further ORDERS that:

1. [Mother] is hereby granted temporary custody of the minor child, [A.N.W.].

2. The minor child herein is not to be removed from Fayette County, Indiana, until further order of this Court.

3. [Father] is granted visitation immediately following this hearing and is ordered to return the child to the mother's home at 8:00pm on this same date.

4. [Father] is granted email and telephone contact with the minor child. Telephone contact may occur specifically between 3:30pm and 5:00pm on Mondays and Fridays and generally at such other reasonable times as the parties may agree.

5. The parties are hereby ordered not to discuss the proceedings of this case with the child or within earshot of the child.

6. Any order heretofore ordered for the support of A.N.W. is hereby vacated.

7. A final hearing is set in this matter for the 30th of May, 2002, at 10:30am.

(Appellant's Attached Appendix p. 1).

On May 8, 2002, Father filed a Motion to Correct Error and a Motion to Dismiss. In the motions, Father asserted that the Texas court retained exclusive jurisdiction

until it declined jurisdiction under Texas law and that Indiana did not have proper jurisdiction over this matter. On May 28, 2002, Mother filed a Response to Father's Motion to Correct Error and Motion to Dismiss and a Memorandum in Support of her Response to Father's Motion to Correct Error and Motion to Dismiss. On May 30, 2002, a hearing was held on these motions. The issue was taken under advisement. However, the trial court, with the consent of the parties, lifted Paragraph 2 of its April 17, 2002 Order.

On June 12, 2002, the trial court denied Father's Motion to Correct Error and Motion to Dismiss. On September 9, 2002, the trial court ordered Father to pay $95 a week in child support for A.N.W. pending final resolution of this matter. On January 28, 2003, the trial court issued its Order on Custody, Support, and Visitation. Mother was awarded legal and physical custody of A.N.W. Father was ordered to pay support in the amount of $95 a week. He was also granted visitation.

Father now appeals.

## DISCUSSION AND DECISION

### I. *Jurisdiction under UCCJA*

Father argues that the Indiana court improperly exercised jurisdiction in this case. Specifically, Father asserts that because Texas had continuing exclusive jurisdiction over custody matters concerning A.N.W., Indiana could not have jurisdiction over this matter unless Texas declined jurisdiction. Father maintains that Texas did not properly decline jurisdiction in this matter and as a result, jurisdiction remained in Texas.

### A. Standard of Review

In determining whether a trial court has improperly exercised jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), we apply an abuse of discretion standard. *Paternity of R.A.F., In re*, 766 N.E.2d 718, 723 (Ind.Ct.App.2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

### B. Indiana Court's Jurisdiction

 At the outset, we note that, Father has waived this issue for our review by failing to make a timely objection to the Indiana trial court's assumption of jurisdiction. Jurisdiction is comprised of three elements: (1) jurisdiction of the subject matter;[1] (2) jurisdiction of the person; and (3) jurisdiction of the particular case. *State v. Willits*, 773 N.E.2d 808, 812 (Ind. 2002). Our supreme court has held that "[t]he jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case." *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind.1990). Thus, jurisdiction of the particular case is implicated here.

"Jurisdiction of the particular case refers to the right, authority, and power to hear and determine a specific case within the class of cases over which a court has subject matter jurisdiction." *Willits*, 773 N.E.2d at 812. A judgment rendered by a court without jurisdiction to hear a particular case is voidable, not void. *Id.* Objections to the court's exercise of jurisdiction are waived if not made in a proper and

---

**1.** "Subject matter jurisdiction refers to the power to hear and determine a general class or kind of case." *State ex rel. Hight v. Marion Superior Court*, 547 N.E.2d 267, 269 (Ind. 1989). The absence of subject matter jurisdiction is not subject to waiver and renders a judgment void. *Id.*

timely fashion. *Grubnich v. Renner*, 746 N.E.2d 111, 114 n. 2 (Ind.Ct.App.2001), *trans. denied.* Challenges to a court's jurisdiction over the particular case must be raised at the first opportunity to avoid waiver. *Harp v. Indiana Dept. of Highways*, 585 N.E.2d 652, 659 (Ind.Ct.App. 1992).

Here, on April 17, 2002, the trial court held a hearing on Wife's petition to transfer and assume jurisdiction and modify the child custody decree. During the hearing, Father confirmed that no proceedings were pending in Texas, where the dissolution decree was issued. Father also confirmed that A.N.W. had been living with Mother since December, 2000 and had been enrolled in school in Indiana since January, 2001. The trial court informed the parties that it had communicated with Judge Sullivan of the Tarrant County, Texas court that had entered the dissolution decree. Judge Sullivan informed the Indiana trial court that "there [were] no pending proceedings concerning this child or between these parties now pending in Tarrant County, Texas, and further that there [had] been nothing pending in the cause ... since the Decree of Divorce in December '95." (Tr. pp. 3–4). The trial court further told the parties that given the allegations in the petition "as to when the child came up here and how long the child's been here and the child's been in school," Judge Sullivan "did not want to continue jurisdiction of this matter in Texas." *Id.* at pp. 4–5.

The record further shows that during the hearing, Father never objected to the trial court's assumption of jurisdiction. In fact, the record shows that when the trial court asked Father, "do you have a problem if I just proceed with making tempo-

rary Orders today," Father responded that he did not. (Tr. p. 6). The record reveals that Father did not object to the trial court's assumption of jurisdiction until May 8, 2002. Thus, because Father did not challenge the trial court's assumption of jurisdiction at the April 17, 2002 hearing, Father did not challenge the trial court's jurisdiction over the case at the first opportunity. Consequently, we find that Father has waived any objection to the trial court's jurisdiction of the case. *See e.g., Grubnich*, 746 N.E.2d at 114 n. 2 (holding that a defendant waived his jurisdiction over the particular case argument by failing to raise it at the earliest opportunity.)

### C. The Uniform Child Custody Jurisdiction Act

 Despite Father's waiver of the issue, we will address the merits of Father's claim. The UCCJA is the "exclusive method of determining the subject matter jurisdiction of a court in a custody dispute with an interstate dimension." *Caban v. Healey*, 634 N.E.2d 540, 542 (Ind.Ct.App. 1994), *trans. denied. See also* Ind.Code §§ 31–17–3–1 to –25; V.T.C.A., Family Code §§ 152.001 to 152.025.[2] Under the UCCJA, the court which first enters a custody decree on a matter gains exclusive jurisdiction only until the child and all parties have left the state. *Stambolija v. Stambolija*, 643 N.E.2d 5, 7 (Ind.Ct.App. 1994). This court has stated:

> The fundamental principle underlying the UCCJA is that once a court with a jurisdictional basis exercises jurisdiction over a "custody" issue, that court retains exclusive jurisdiction over all custody matters so long as a "significant connection" remains between the controversy and the state, and that court alone has

---

**2.** V.T.C.A., Family Code §§ 152.001 to 152.025 refers to the statutory citation for Texas as one of the jurisdictions that has

adopted the UCCJA. *See* I.C. § 31–17–3, Table of Jurisdictions wherein the UCCJA has been adopted.

discretion to decide whether it will defer jurisdiction to the court of another state upon the basis that the other court is a more convenient forum to litigate the issues. A "significant connection" remains under the scheme as long as one parent continues to reside in the state rendering the initial determination.

*Matter of E.H.*, 612 N.E.2d 174, 185 (Ind. Ct.App.1993), opinion adopted, 624 N.E.2d 471 (Ind.1993) (internal citations omitted).

Here, the Texas court entered the original custody determination in the divorce action. Additionally, Father continues to reside in Texas. Thus, the Texas court had continuing exclusive jurisdiction of custody matters concerning A.N.W. despite Mother's relocation to Indiana. Specifically, a "significant connection" remained with the Texas court. *See id.* However, our review of the record indicates that the Texas court deferred jurisdiction in this case to the Indiana court under the UCCJA.

■ The court that has exclusive jurisdiction may decline to exercise its jurisdiction if it determines that a different forum is in a better position to entertain the litigation. *See Paternity of R.A.F., In re,* 766 N.E.2d at 723; *Wilcox v. Wilcox,* 635 N.E.2d 1131, 1134–35 (Ind.Ct.App.1994). The relevant portion of Indiana's version of the UCCJA states:

(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

\* \* \*

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

I.C. § 31–17–3–7. *See also,* I.C. § 31–17–3–6, which provides, in pertinent part:

(a) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

\* \* \*

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and *communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 22 of this chapter* . . . .

(emphasis added).

In the present case, the record indicates that the Texas court declined to exercise its jurisdiction because it felt that the Indiana court was the more appropriate forum to make the custody determination under the circumstances. *See* I.C. § 31–17–3–7(a). Moreover, the record shows that before determining whether to decline or retain jurisdiction the Texas court communicated with the Indiana court. *See*

I.C. § 31–17–3–6(c). Here, the Texas and Indiana courts exchanged information pertinent to the assumption of jurisdiction by either court. Both the Texas and Indiana courts wanted to assure that jurisdiction would be exercised in the more appropriate court and that a forum would be available to the parties. *See* I.C. § 31–17–3–7(d).

In particular, our review of the record reflects that on April 17, 2002, Judge Reinke of the Fayette Circuit Court in Indiana contacted Judge Sullivan, the presiding Judge of Tarrant County, Texas court via telephone about Mother's Verified Petition to Transfer and Assume Jurisdiction and to Modify Custody Decree of Another State. As stated above, this Texas court entered the Decree of Divorce between Father and Mother on December 15, 1995. After discussing the situation, Judge Sullivan advised Judge Reinke that there were no pending proceedings concerning A.N.W. or between Father and Mother in Tarrant County, Texas. Further, Judge Sullivan informed Judge Reinke that under the circumstances of the emergency petition, *i.e.* A.N.W. has lived in Indiana since December of 2000 and A.N.W. has attended school in Indiana since January of 2001, he did not want to continue jurisdiction of this matter in Texas. As a result, Judge Sullivan of Tarrant County, Texas declined jurisdiction because he "believed [Indiana] should properly go ahead and decide the issues of custody here." (Tr. p. 5).

Therefore, since the Texas court declined jurisdiction on April 17, 2002, we find that the Indiana court rightfully assumed jurisdiction. *See* I.C. § 31–17–3–7(a)(d). As a result, it is our determination that the trial court properly entered its Order on Custody, Support and Visita-

tion. *See Paternity of R.A.F., In re,* 766 N.E.2d at 723.

■ Nevertheless, Father raises two objections to the manner in which Texas declined jurisdiction. First, Father argues that the parties were not allowed to submit information to the Texas court pursuant to Tex. Fam.Code § 152.207(b). Specifically, the Texas statute regarding declining jurisdiction in custody disputes provides that: "[b]efore determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court *shall allow the parties to submit information* and shall consider all relevant factors. . . ." Tex. Fam.Code § 152.207(b) (2002) (emphasis added). While Father did not directly submit information to the Texas court, the trial court informed the Texas court of the jurisdictional allegations in Mother's petition and Father did not dispute any of those allegations. Further, the record is devoid of evidence where Father identified additional information he would have submitted to the Texas court that might have affected the Texas court's decision to decline jurisdiction.

■ Second, Father suggests that the trial court's telephone conversation with the Texas court is insufficient to support a conclusion that the Texas court declined jurisdiction. As previously stated, Indiana Code section 31–17–3–6(c) permits the Indiana court to "communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged. . . ." We find nothing in the Indiana statutes that requires a written order from the court that is declining jurisdiction.[3] How-

---

**3.** However, Indiana Code section 31–17–3–7(i) provides that "[a]ny communication re-

ceived from another state informing this state of a finding of inconvenient forum because a

ever, other courts have addressed this issue and reached varying results. *See, e.g., Draper v. Roberts,* 839 P.2d 165 (Okla. 1992) (holding that "[r]eliance solely upon oral communications between judges can cause confusion. The better rule of practice ... is that without written notification that the sister-state court yields jurisdiction ... Oklahoma must defer to the pending first-commenced forum litigation."); *Berry v. Berry,* 466 So.2d 138 (Ala.Civ. App.1985) (holding that communication by telephone was sufficient to waive jurisdiction, particularly where no objection to such communication was raised); *Liska v. Liska,* 902 P.2d 644 (Utah Ct.App.1995) (holding that a trial court's failure to make any record, written or otherwise, of its communication with another court declining jurisdiction was error, but the error was harmless where the undisputed facts overwhelmingly demonstrated that the trial court correctly declined jurisdiction); *see generally* David Carm Minneman, *Declining Jurisdiction to Modify Prior Child Custody Decree Under § 14(a)(1) of the UCCJA and Parental Kidnapping Prevention Act,* 73 A.L.R.5th 185 § 5 & 6 (1999).

Thus, although we believe that it would have been a better practice for the Texas court to follow up the telephone conversation with an order declining jurisdiction; nevertheless, Father has not suggested how this alleged error has harmed him. Specifically, Father has not produced any evidence that the Texas court did not actually decline jurisdiction over this case.

Additionally, Father has failed to demonstrate that he was prejudiced by the alleged errors. *See, e.g., Schneider v. Schneider,* 555 N.E.2d 196, 199 (Ind. Ct. App.1990) ("While it would have been the better practice to have the Wisconsin court formally decline to assume jurisdiction, it is not fatal to this state in assuming ... jurisdiction.") Therefore, we find that Father's arguments are without merit.

■ Further, we note that under the "home state" analysis of the UCCJA, the Indiana court properly exercised jurisdiction over this matter.[4] Indiana Code section 31–17–3–3 states, in pertinent part, as follows:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding ...;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state ...;

...

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with

court of this state is in the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact."

**4.** We note that, "home state" is a statutory term and the statute gives it a definition as provided in Ind.Code section 31–17–3–2(5), which states, in relevant part:

"home state" means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period.

paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child . . . .

In this case, A.N.W. has lived in Indiana since December 25, 2000. Moreover, A.N.W. has attended school in Indiana since January of 2001. This action was initiated on April 16, 2002. Thus, A.N.W. has lived in Indiana for over one year prior to the initiation of this action. Clearly, Indiana is the home state of A.N.W. because she lived in Indiana for at least six consecutive months. *See* I.C. 31–17–3–3(a)(1)(A). Moreover, it is in the best interest of A.N.W. that an Indiana court assume jurisdiction because A.N.W. and Mother have a significant connection with this state. *See* I.C. § 31–17–3–3(a)(2)(A). Additionally, the Texas court determined that the Indiana court was the more appropriate forum to determine the custody of A.N.W. and declined to exercise its jurisdiction. *See* I.C. § 31–17–3–3(a)(4)(A); I.C. § 31–17–3–7(a)(d). With all of the above in mind, we find that the Indiana court properly assumed jurisdiction of this case. Thus, we conclude that the trial court properly entered its Order on Custody, Support and Visitation. *See Paternity of R.A.F., In re,* 766 N.E.2d at 723.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly assumed jurisdiction of this case where the Texas court declined its jurisdiction. Further, we conclude that the trial court properly assumed jurisdiction of this case because Indiana is the home state of A.N.W.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.