## Commonwealth v. Mitchell

*Samuel Teeter, Assistant District Attorney,* for Commonwealth.

*Ronald J. Hagarman,* for petitioner.

SPICER, *P.J.,* August 5, 1980—The domestic relations officer has registered an order entered in Maryland against Andrew R. Mitchell (herein

called obligor) who has petitioned to vacate the registration.

The chapter of the Judicial Code containing the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 42 Pa.C.S.A. §6741 et seq., authorizes the registration of foreign support orders. Under section 6780, once an order is registered it has the effect of establishing a current order to be treated "in the same manner as a support order issued by a court of this Commonwealth." It also establishes arrearages on that order which may be collected in accordance with the act.

Mr. Mitchell contends that the Maryland order is not a "support order" and therefore it cannot be registered.

The Maryland order was entered as "alimony for the said Mary R. Mitchell and for the support and maintenance of the infant children of this marriage."

Counsel for the obligor has correctly pointed out that Pennsylvania Courts have refused to enforce alimony awards through RURESA. See, e.g., Com. ex rel. Platt v. Platt, 227 Pa. Superior Ct. 423, 323 A. 2d 29 (1974). The domestic relations officer, while conceding this to be true, argues that the Divorce Code of April 2, 1980, No. 26, 23 P.S. §101 et seq., effectively changed the rule established by these cases effective July 1, 1980.

The court is convinced the domestic relations officer is correct in his position.

To arrive at this conclusion, we begin with the fact that our courts have never said foreign alimony awards were unenforceable. Indeed, such a stance might well be violative of the full faith and credit provision of the Constitution. Our courts have held that such orders must be enforced through actions in assumpsit based on a foreign judgment.

RURESA in the definition section, 42 Pa.C.S.A. §6742, defines a "Support Order" as follows: "Any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered."

It defines "Duty of Support" as follows: "A duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for divorce, separation, separate mainte- nance, or otherwise and includes the duty to pay arrearages of support past due and unpaid."

Therefore, not surprisingly in light of the fact that this is a uniform act, both definitions encompass awards for alimony. Obligor correctly submits that this act does not create duties and rights but merely provides a procedure by which they may be en- forced.

Prior to July 1, 1980, Pennsylvania imposed no duty upon a divorced spouse to pay alimony. Therefore, the courts declined to use the remedies of enforcement available in support proceedings to enforce foreign alimony awards. There seems to be no reason to continue this approach in light of the provisions of the Divorce Code.

The Divorce Code not only authorizes entry of an award of alimony but provides for registration and enforcement of foreign alimony decrees in proce- dures similar to those established in 42 Pa.C.S.A. §§6780(a) and 6708. See 23 P.S. §§506 and 503.

It would, therefore, appear abundantly clear that the domestic relations officer was authorized to register the Maryland decree. Therefore, the at- tached order shall be entered.

## ORDER

And now, August 5, 1980, the petition to vacate registration is dismissed and the registered support order is confirmed.